UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

Civil Action No. 1:23-cv-12283

DIANNA FAHEY,

DANIEL FAHEY &

MARIE FAHEY,

    *Plaintiffs*,

v.

CURRY COLLEGE

  &

ERIK MUURISEPP,

    *Defendants.*

**<u>VERIFIED COMPLAINT</u>**

## <u>INTRODUCTION</u>

Dianna Fahey is a freshman at Curry College. She has epilepsy, seizures, and chronic pain. Ms. Fahey wants to reside on campus like any other student. However, Curry College has required that she live in a double room without a roommate and with a Personal Care Attendant at her expense. Ms. Fahey's medical condition does not require such supervision or care at any time of the day, including while sleeping.

Curry College originally promised Ms. Fahey that she could live on campus as a residential student and there was no requirement for a Personal Care Attendant. Ms. Fahey was assigned as a roommate to another student in a double room. Erik Muurisepp, Vice President of Student Affairs and Dean of Students, informed Ms. Fahey of the Personal Care Attendant

requirement on August 10, 2023 and August 11, 2023.  She and her parents immediately

objected, and she followed up in writing on August 14, 2023.  Afterward, Ms. Fahey was

removed from her roommate and transferred to another double room without a roommate.  She

has been a commuter student so far this school year.  As a result, Ms. Fahey has suffered and

continues to suffer emotionally, socially, and academically from the denial of opportunity and

access to campus residential life.

Ms. Fahey also has a pain management plan that requires accommodation for breaks

outside the classroom to a designated private quiet space.  This accommodation has never been

provided.

As a result of Curry College's actions, including discrimination, Dianna Fahey has

suffered injuries and damages and seeks to remedy her situation by filing this complaint.

<u>PARTIES</u>

1.    Plaintiff Dianna Fahey resides in Abington, Plymouth County, Massachusetts.

2.    Plaintiff Daniel Fahey resides in Abington, Plymouth County, Massachusetts.

3.    Plaintiff Marie Fahey resides in Abington, Plymouth County, Massachusetts.

4.    Defendant Curry College is a private college located in Milton, Norfolk County,

Massachusetts.

5.    Defendant Erik Muurisepp is the Vice President of Student Affairs and Dean of Students

of Curry College, which is located in Milton, Norfolk County, Massachusetts.

<u>JURISDICTION</u>

6.    This Court has original jurisdiction to hear the federal claims in this matter pursuant to

Article III of the United States Constitution and 28 U.S.C. § 1331.

7.    This Court has supplemental jurisdiction to hear the remaining claims in this matter
      pursuant to 28 U.S.C. § 1367.

## FACTS

8.    Dianna Fahey is 18 years old.  She lives with her parents Daniel and Marie Fahey in
      Abington, Massachusetts.

9.    Ms. Fahey graduated from Abington High School in June 2023 and currently attends
      Curry College.  At college, she wants to live on campus like every other student who
      chooses to have that experience.  Her goals include earning a college degree and working
      in the medical field.  She has typical hobbies and interests, like exercise, movies, baking,
      and reading.

10.   Ms. Fahey is diagnosed with focal epilepsy involving the left upper extremity.  Her
      seizure history dates back to 2007.  Currently she has generalized tonic and left-sided
      hemiclonic seizures that occur mostly in sleep.  The seizures are brief, lasting between 5-
      30 seconds.

11.   Focal epilepsy is a neurological condition in which the predominant symptom is recurring
      seizures that affect one hemisphere of the brain.  With generalized tonic seizures, the
      body can become stiff or tense.  With hemiclonic seizures, there can be a rhythmic
      shaking on one side of the body.

12.   Neurologist Chellamani Harini, M.D., treats Ms. Fahey for her epilepsy and seizure
      disorder.  She has been part of her treatment team since 2008 and her primary neurologist
      since 2013.  Dr. Harini is an Attending Physician in Epilepsy in the Division of Epilepsy
      and Clinical Neurophysiology at Boston Children's Hospital in Boston, Massachusetts.

13.    Dr. Harini wrote a letter dated July 25, 2023 on Ms. Fahey's behalf "enthusiastically"

supporting her living on campus at Curry College.  *A redacted copy of Dr. Harini's July*

*25 letter is attached as Exhibit A.*  In the letter, Dr. Harini wrote:

> Dianna is an 18-year-old young woman that I follow with a history of focal
> epilepsy involving the left upper extremity. She has generalized tonic and left-
> sided hemiclonic seizures that occur mostly in sleep. The etiology of her
> epilepsy is likely related to a right frontocortical malformation. She underwent
> a laser ablation to that area in October of 2019 following sEEG monitoring.
>
> Current medications include:
> cenobamate 100 mg oral tablet = 1 tab QAM
> cenobamate 200 mg oral tablet = 1 tab QPM
> lacosamide 100 mg oral tablet, 150 mg = 1.5 tab BID
> levETIRAcetam 500 mg oral tablet, 2 tabs (1000mg) in AM and 3 tabs
> (1500mg) in PM LORazepam 1 mg oral tablet, give 1 mg for clusters of 3 or
> more seizures in 1 hour
> midazolam (Nayzilam 5 mg/inh nasal spray), 10 mg Nasal 1time (5mg in each
> nostril) for seizure >5min or seizure cluster
>
> I enthusiastically support her decision to live on campus this fall at Curry
> College. She should register with the health services office. She continues to
> have brief nocturnal seizures (5-30 seconds in duration) although exact seizure
> frequency is unclear. There have been no daytime events in many months.
>
> Our team is happy to answer questions school team may have on Dianna's
> health needs.

14.    Dr. Harini updated Ms. Fahey's Seizure Action Plan on July 25, 2023.  *A redacted copy*

*of this Seizure Action Plan is attached as Exhibit B.*  The Seizure Action Plan was

consistent with the July 25 letter and also listed the daily medication oxcarbazepine,

which treats partial seizures.  A previous Seizure Action Plan was originally set to expire

in August 2023.

15.    Cenobamate is a medication taken by mouth to treat focal (or partial-onset) seizures.  Ms.

Fahey regularly takes this medication twice daily, in the morning (QAM) and evening

(QPM).

16.     Lacosamide is a medication taken by mouth to treat focal (or partial-onset) seizures.  Ms. Fahey regularly takes this medication twice daily (BID).

17.     Levetiracetam is an antiepileptic medication used to treat seizures.  Ms. Fahey regularly takes this medication twice daily, in the morning and evening.

18.     Lorazepam is a sedative medication that can be used on an as needed basis to stop a seizure. This medication is taken orally and is prescribed for Ms. Fahey for clusters of three or more seizures in one hour.  As noted in the Seizure Action Plan, Ms. Fahey can self-administer this medication.  She last used this medication during the day in November 2022 at school and administered it herself.

19.     Midazolam is a nasal spray that is used for immediate, short-term, emergency treatment of a long convulsive seizure.  This medication is prescribed for a seizure or seizure cluster lasting longer than five minutes.  This medication has never been used for Ms. Fahey.  Furthermore, Ms. Fahey has not had such a seizure episode since 2016, and medical interventions and changes to her daily medication regimen have been successful in preventing such an episode from occurring again.

20.     Ms. Fahey rarely wakes up during nocturnal seizures.  When she does wake up, she falls right back to sleep without assistance, or if it happens when she is waking up in the morning, she is awake for the day.

21.     Ms. Fahey also experiences chronic upper extremity pain, mainly in her left arm.  On March 17, 2023, the Pediatric Pain Rehabilitation Center of Boston Children's Hospital made recommendations for treatment related to Ms. Fahey's chronic pain and issued a pain management plan.

22.     Katrina Boyer, Ph.D, ABPP-CN, Director of the Neuropsychology of Epilepsy Program
        at Boston Children's Hospital, conducted a neuropsychological assessment of Ms. Fahey
        in March 2021.  In summary, the assessment showed overall cognitive ability in the
        average range with improvement in some areas compared to a 2018 evaluation and with
        relative compromise in some areas in the context of her focal seizure disorder.  Ms.
        Fahey did not demonstrate issues with attention or impulse control, her behavioral and
        emotional regulation was secure, and her daily living skills were age appropriate.

23.     Ms. Fahey graduated from Abington High School in June 2023.  She had an
        Individualized Education Program (IEP) that identified a Health disability due to her
        seizure disorder.

24.     Ms. Fahey enrolled in Curry College as a freshman for the 2023-24 school year starting
        fall 2023.  She initially registered as a commuter student.

25.     Prior to beginning her freshman year, Ms. Fahey participated in the summer component
        of the Program for Advancement of Learning (PAL) Program at Curry College.
        According to Curry College, PAL "provides academically focused assistance to bright,
        college-able students with diagnosed learning differences, executive function challenges,
        and/or AD/HD."  The Summer Program provides an opportunity to become familiar with
        the campus, staff, and other students, and learn strategies for transitioning to college
        academics.  The Summer Program is also a credit-bearing course.  The 2023 Summer
        Program lasted from July 17, 2023 to August 4, 2023.

26.     Curry College knew as early as January 2023 that Ms. Fahey has epilepsy and seizures
        when Mr. Fahey provided medical and educational records to the PAL Program,
        including the March 2021 neuropsychological report, a 2018 neuropsychological report

from Boston Children's Hospital, and Ms. Fahey's IEP.  This was done for Ms. Fahey to be approved for the program.  Mr. Fahey also spoke to Nicole Parsons, Director of the PAL Program, in May 2023 regarding a scholarship for the PAL Summer Program and let her know that Ms. Fahey has epilepsy.

27.     From approximately June 14, 2023 through July 14, 2023, in preparation for the PAL Summer Program, the Faheys communicated with Curry College staff, including Director of Curry College's Health Services Department Kathy Joyce, R.N., and Nicole Kaimer, Director of Student Disability Services (and her assistant), about Ms. Fahey's medical conditions, including her seizure disorder and chronic left arm and extremity pain.

28.     Kathy Joyce requested medical documents to be submitted and doctor releases to be signed, with which Ms. Fahey and her parents complied.  Curry College received a number of documents, including physical health and immunization records, and the pain management materials from Boston Children's Hospital.  Curry College received a Seizure Action Plan on June 21, 2023.

29.     According to the pain management plan, Ms. Fahey requires short breaks outside the classroom to go to a designated private quiet space for stretches, exercises, and relaxation strategies.  Kathy Joyce acknowledged as early as July 5, 2023 that she and Nicole Kaimer were working to find a space for Ms. Fahey consistent with the related recommendation in the plan.

30.     Ms. Fahey registered for the PAL Summer Program as a commuter student.  However, starting with a welcome event on Sunday, July 16, 2023, she decided she wanted to try living on campus as other students in the program did.  The family discussed this with a number of individuals from Curry College.

31.   On Monday, July 17, 2023, Nicole Parsons said that Ms. Fahey could live on campus, and Mr. and Mrs. Fahey immediately wrote the check for the additional cost.  That afternoon, Ron Martel, interim Vice President of Student Affairs, and Lisa Rodrigues, interim Dean of Students, met with the family.  They stated that Ms. Fahey would have to live in a single room because of her medical history with seizures and indicated Ms. Fahey might be able to move in the next day.

32.   On Wednesday, July 19, 2023, the family met with Nicole Parsons, Ron Martel, Lisa Rodrigues, and Kathy Joyce.  At the college's request, Ms. Fahey agreed for Curry College to communicate with her medical team in Dr. Harini's office at Boston Children's Hospital.

33.   On Friday, July 21, 2023, Kathy Joyce spoke with a nurse in Dr. Harini's office, who said Dr. Harini recommended that Ms. Fahey have a roommate.  Ron Martel then told Ms. Fahey and Mr. and Mrs. Fahey that Ms. Fahey would not be able to live on campus for the PAL Summer Program but was confident she could for the fall.  He even told Ms. Fahey to ask girls in the PAL Summer Program if they wanted to room together, and that if she wasn't able to find a roommate, Curry would assign one for her.

34.   Ms. Fahey enjoyed her PAL Summer Program experience, and she attended daily without incident.  She earned an A grade and plaudits from her professor, including remarks that she was "solid, prepared, and consistent", gave her "best effort", and had "impressive attendance".  However, Ms. Fahey was disappointed that she was not able to enroll as a resident student to have the full program experience.

35.   The family provided Dr. Harini's July 25 letter along with the updated Seizure Action Plan dated July 25 to Curry College on Wednesday, July 26, 2023.  Neither document

required a roommate, caretaker, or Personal Care Attendant for Ms. Fahey. *See* Exhibits A and B.

36.     On July 26, 2023, Ron Martel told Ms. Fahey and her father that she could reside on campus in the fall with a roommate and instructed them to re-register her as a resident student.

37.     Ms. Fahey and her father went in person to the Admissions Office on July 27, 2023 to change her status and pay the additional expense as a resident student for room and board and a resident meal plan. This was done with Director of Admission Joan Fongeallaz.

38.     On Tuesday, August 1, 2023, Ms. Fahey received a welcome email from Curry College's Residence Life and Housing stating they were looking forward to having her in the residence halls.

39.     That same day, the new Vice President of Student Affairs and Dean of Students Erik Muurisepp spoke to Mr. Fahey by phone. Mr. Fahey had called to find out Ms. Fahey's status as a resident student and her room assignment. Mr. Fahey said to Erik Muurisepp that Ron Martel had approved Ms. Fahey living on campus. Erik Muurisepp said Ron Martel is no longer here, we have a lot of information to review, I will get back to you.

40.     On Thursday, August 3, 2023, Ms. Fahey and her parents went to Student Affairs to see if they could get information on her living arrangements. They were directed to Erik Muurisepp, and they met with him in person. Mr. Fahey again said that Ron Martel had approved Ms. Fahey living on campus. Erik Muurisepp said that was verbal and it's not in writing. Erik Muurisepp still did not have an answer for the family about Ms. Fahey's status and ended the meeting by saying, "Don't call us, we'll call you."

41.    Erik Muurisepp finally followed up in a conference call with the family on Thursday,

August 10, 2023.  He stated that Curry College required that Ms. Fahey have a Personal

Care Attendant if she lived on campus and that the family would have to pay for it.  Ms.

Fahey and her parents were shocked and strongly disagreed with the decision.

42.    After the meeting, that same day, Ms. Fahey received an email from a student who said

she was assigned to be her roommate.  This both excited and confused Ms. Fahey, as she

looked forward to connecting with a roommate but was just told she could not have one.

43.    On August 10, 2023, Dr. Harini authorized a request for Ms. Fahey to have air

conditioning in her dorm room.

44.    On Friday, August 11, 2023, Erik Muurisepp sent an email stating in part:

> - as noted in medical documentation, Dianna can't live in a single room (or by
> herself) on campus
>
> - we wouldn't and can't have you ask a roommate to take on the responsibility
> of monitoring or caring for DF as a peer and roommate - should an emergency
> situation arise within the resident space.
>
> - In the same spirit, should an assigned roommate feel it is too much, or not be
> a good match, and choose to move out, we would need to then ask Dianna to
> move off campus until a new roommate could be identified - as noted earlier
> she can't live alone.
>
> - we can offer a double room, without a roommate, but would require a
> Personal Care Attendant to be with her overnight (as that's when the greatest
> concern for the documented medical event may be). This would be at your
> cost. Should this be the outcome, we would then work with you on the steps to
> finalize this.
>
> - Dianna is still able to attend Curry as a commuter student and participate in
> all academic and social events as any Curry student would.

*A redacted copy of Erik Muurisepp's August 11 email is attached as Exhibit C.*

45.   There is no medical documentation that "Dianna can't live in a single room (or by herself) on campus".  The only "documented medical event" overnight is her nocturnal seizures, which do not require emergency medical care or specialized supervision.

46.   Average annual salaries for Personal Care Attendants in the Boston area range from $36,180 to $40,421.  Average hourly rates for Personal Care Attendants in the Boston area range from $17 to $26 per hour.[1]

47.   On Monday, August 14, 2023, in response to Erik Muurisepp's August 11 email, Ms. Fahey wrote:

> Am I being denied access to live on campus at Curry College unless I choose the school's recommendation to live in a double room with a Personal Care Attendant at our cost? I have strongly indicated that I want to live on campus at Curry College this fall with a roommate. Is Curry College also implying that I can only attend the college as a commuter? I have paid the student resident tuition to Curry College and the funds were accepted by Curry College.

> The medical documentation from my doctor, Chellamani Harini, dated July 25, 2023, states that she enthusiastically supports my decision to live on campus and that I register with the health services office, which I have. It is not noted in her medical documentation that I cannot live in a single room (or by myself), but I have always emphasized that I wanted to live on campus with a roommate.

> I am in no way, shape or form, asking that an assigned student who would room with me be responsible for monitoring or caring for me. That is not necessary and I have not asked for someone to care for me. The privacy of my medical condition is important to me and it will be my decision when I choose to tell a roommate about my medical condition. Just as it would be for any other student who may have a medical condition to room with me, it would be their choice to share that information.

> Why has my name been given to someone for a room assignment and she has communicated with me, but I have not been given any information about a room assignment or a roommate. I left you a voicemail message on Thursday

---

[1]   *See*   https://www.salary.com/research/salary/alternate/patient-care-assistant-pca-salary/boston-ma   (last accessed   October   2,   2023);   https://www.glassdoor.com/Salaries/boston-personal-care-attendant-salary-SRCH_IL.0,6_IM109_KO7,30.htm (last accessed October 2, 2023); https://www.ziprecruiter.com/Salaries/Personal-Care-Assistants-Salary--in-Massachusetts (last accessed October 2, 2023).

morning, not long after our call, and asked you to call me but I have not heard back from you and this information was not included in your email below. Please provide me the information for my room assignment.

48.   That same day, the roommate assigned to Ms. Fahey informed her she was no longer her roommate.

49.   On Wednesday, August 16, 2023, Ms. Fahey received an orientation email from Curry College that move-in for new students was scheduled for Thursday, August 24, 2023.

50.   Ms. Fahey was informed on the Curry College Student Portal on Thursday, August 17, 2023 that she was assigned to a double room with no assigned roommate.  The entry noted the room accommodated two students.  A different section of the Student Portal later listed the room as "Standard-Double" with the number of beds as "1".

51.   In response to Curry's requirement that Ms. Fahey have a Personal Care Attendant to live on campus, Dr. Harini wrote a letter dated August 17, 2023.  *A redacted copy of Dr. Harini's August 17 letter is attached as Exhibit D.*  Dr. Harini's letter stated:

> Dianna is an 18-year-old young woman that I follow with a history of focal epilepsy involving the left upper extremity. She has generalized tonic and left-sided hemiclonic seizures that occur mostly in sleep. Dianna does not require special housing accommodations for the upcoming academic year.

The letter was sent to Curry College the next day.

52.   Mr. and Mrs. Fahey spoke by phone with Dr. Harini on Friday, August 18, 2023.  During this conversation, Dr. Harini said she would support Ms. Fahey being a resident student at Curry College with a roommate but she did not feel that Ms. Fahey needed a Personal Care Attendant.  She was in full support of Ms. Fahey living on campus and said the first letter she provided was all they have ever had to provide for patients attending school.

53.     Thursday, August 24, 2023 was the first day of welcome weekend and orientation for all
        new students and move-in day for new resident students.  Ms. Fahey attended the
        orientation.  Ms. Fahey was told she was registered as a resident student, not a commuter
        student.  The status on her student identification card was resident.  During the
        President's Welcome address, Erik Muurisepp gave a speech in which he said he cared
        about the students and was there to support them.  Ms. Fahey got visibly very upset,
        cried, and said she wanted to leave.  The whole family left and went home.  The
        experience was clearly taking a toll on her.

54.     On Friday, August 25, 2023, Ms. Fahey received a voicemail from the Admissions office
        confirming her enrollment, and stating she had not moved in yet.

55.     Classes began at Curry College on Monday, August 28, 2023.

56.     Ms. Fahey lives at home and commutes to Curry College despite being registered as a
        resident student and having paid the resident student tuition and fees because Curry has
        assigned her to a double room without a roommate and is requiring her to have a Personal
        Care Attendant at her expense.

57.     Though she paid for the full resident meal plan (17 meals per week), she has not been
        able to eat at the resident cafeteria other than for lunch four days per week.

58.     Curry College has also denied Ms. Fahey a plan for taking short breaks in a designated
        private quiet space as necessary when she is experiencing chronic pain, as required by
        Boston Children's Hospital pain management plan and despite previous assurance by
        Curry College this would be provided to her.  As a result, Ms. Fahey struggles to find a
        place to go when she has arm pain.

59.    The experience has significantly affected Ms. Fahey physically, mentally, emotionally,

       and socially.  Ms. Fahey is extremely upset that she is not able to live on campus and

       have the full college experience.  She wants to be treated like every other student at Curry

       College.  Ms. Fahey missed going to all the evening and weekend events during the

       welcome weekend.  She wanted to join a club but does not feel comfortable because they

       meet at night and she is not there.  Ms. Fahey is nervous to go to events and does not

       know how to answer questions when friends ask "when are you moving in".

60.    Ms. Fahey continues to be a part of the PAL Program during the school year.  However,

       she misses out on study groups and does not go to the PAL Program as often as she

       would like because she is not living on campus.  PAL is meant to support Ms. Fahey with

       her learning differences.  Ms. Fahey chose Curry College in part because of the PAL

       program and the atmosphere of the college.

61.    Ms. Fahey is having stomachaches, stress, anxiety, and more chronic arm pain as a result

       of this experience.

62.    The family paid $7215 for resident housing and a meal plan (17 meals per week) per

       semester, for a total for the year of $14,430.  There are additional transportation expenses

       for traveling between home and school, approximately $100 per week.  One way travel is

       over 15 miles and takes over half an hour, longer with traffic.  Mr. Fahey has lost wages

       and Mrs. Fahey has taken vacation time from work to deal with this matter.

63.    This experience has had a major impact on Mr. and Mrs. Fahey as well.  Since the first

       day that Ms. Fahey set foot on campus for the PAL Summer Program, they have been on

       an emotional rollercoaster.  Their first priority is always their daughter's health and well

       being and they would never put her in a situation where her health was in danger or

where she would not be safe.  They assisted Ms. Fahey in providing medical information to Curry College to be transparent about her medical needs but now feel that information has been used against her.  The stress has affected them as a couple and as a family, impacting their jobs and livelihood.  They want Ms. Fahey to be treated fairly and have the same opportunity for a college experience as any other student.

64.   Mr. and Mrs. Fahey have both lost sleep, and are both stressed and anxious from all of this.  Mrs. Fahey also has migraines.

65.   Curry College has a Student Handbook.  The Student Handbook claims that Curry College and its "Office of Disability Services is committed to promoting an accessible, equitable and inclusive learning environment at the College for all undergraduate, graduate, and continuing education students with disabilities as defined by applicable disability laws."

66.   Curry College receives federal financial assistance, including receiving funding from federal financial aid programs.

67.   On August 19, 2023, the family filed an Office for Civil Rights complaint with the United States Department of Education.

**LEGAL CLAIMS**

COUNT I – Americans with Disabilities Act – Discrimination
(42 U.S.C. § 12182)

[Against Curry College]

68.   The Plaintiff Dianna Fahey repeats and reavers Paragraphs 1 through 67 above and incorporates them herein by reference.

69.   Dianna Fahey has more than one physical or mental impairment, including epilepsy, seizure disorder, and chronic pain, that substantially limit one or more of her major life activities, including but not limited to learning and neurological function.  Curry College regarded her as having such impairment, and she has a record of such impairment.

70.   Curry College owns and operates a place of public accommodation as an institution of higher education.

71.   Curry College is denying Dianna Fahey the opportunity to participate in resident housing like any other student who chooses to do so by requiring her to live with a Personal Care Attendant at her own expense and barring her from having a roommate.  Such a restriction also effectively offers a benefit that is unequal compared to other students, by denying her the opportunity to have a roommate and requiring a Personal Care Attendant. Ms. Fahey is being treated differently and separately by Curry College due to her disabilities by imposing these conditions.

72.   Curry College has failed to make reasonable modifications to its programming for Ms. Fahey's chronic pain as required by her pain management plan.

73.   As a result, Dianna Fahey was harmed by the actions and omissions of Curry College, including being denied the opportunity to fully access campus residential life and programming, and she has suffered injuries, damages, and humiliation.

<u>COUNT II – Americans with Disabilities Act – Retaliation</u>
<u>(42 U.S.C. § 12203)</u>

[Against Curry College and Erik Muurisepp]

74.   The Plaintiff Dianna Fahey repeats and reavers paragraphs 1 through 73 above and incorporates them herein by reference.

16

75.   Dianna Fahey engaged in protected conduct when she objected to the decision by Curry College to prevent her from residing on campus with a roommate and residing on campus at all unless she lived with a Personal Care Attendant at her expense based on her disability.

76.   The Defendants Curry College and Erik Muurisepp afterward removed Ms. Fahey's assigned roommate and transferred her to a different double room without a roommate. Curry College also did not implement the recommendations in Ms. Fahey's pain management plan during the school year after promising to do so.

77.   As a result, Dianna Fahey was harmed by the actions of the Defendants and suffered injuries, damages, and humiliation, as explained in detail above.

COUNT III – Section 504 of the Rehabilitation Act – Discrimination
(29 U.S.C. § 794)

[Against Curry College]

78.   The Plaintiff Dianna Fahey repeats and reavers Paragraphs 1 through 77 above and incorporates them herein by reference.

79.   Dianna Fahey has more than one physical or mental impairment, including epilepsy, seizure disorder, and chronic pain, that substantially limit one or more of her major life activities, including but not limited to learning and neurological function.  Curry College regarded her as having such impairment, and she has a record of such impairment.

80.   Ms. Fahey is otherwise qualified for participation in Curry College's full academic and residential programming, as her disability does not prevent her from engaging in this programming.

81.   Ms. Fahey is being excluded from participation in and being denied the benefits of Curry College's programming, and being subjected to discrimination by Curry College, solely

by reason of her handicap by, for example, banning her from having a roommate and requiring her to live with a Personal Care Attendant at her expense in order to reside on campus and not implementing the recommendation of her pain management plan.

82. Curry College receives federal financial assistance, including funding from federal financial aid programs.

83. Curry College intentionally imposed the discriminatory decision to bar Ms. Fahey from having a roommate and the discriminatory requirement of living with a Personal Care Attendant at her expense based on her disability. Curry College also intentionally did not follow through with accommodating her pain management plan after promising to do so.

84. As a result, Dianna Fahey was harmed by the actions of Curry College, including being denied the opportunity to fully access campus residential life and programming, and suffered injuries, damages, and humiliation.

<u>COUNT IV – Section 504 of the Rehabilitation Act – Retaliation</u>
<u>(29 U.S.C. § 794 & 28 C.F.R. § 42.503)</u>

[Against Curry College and Erik Muurisepp]

85. The Plaintiff Dianna Fahey repeats and reavers paragraphs 1 through 84 above and incorporates them herein by reference.

86. Dianna Fahey engaged in protected conduct when she objected to the decision by Curry College to prevent her from residing on campus with a roommate and residing on campus at all unless she lived with a Personal Care Attendant at her expense based on her disability.

87. The Defendants Curry College and Erik Muurisepp afterward removed Ms. Fahey's assigned roommate and transferred her to a different double room without a roommate.

Curry College also did not implement the recommendations in Ms. Fahey's pain management plan after promising to do so.

88. As a result, Dianna Fahey was harmed by the actions of the Defendants and suffered injuries, damages, and humiliation, as explained in detail above.

<u>COUNT V – Article CXIV, Massachusetts Constitution and Declaration of Rights</u>

[Against Curry College]

89. The Plaintiff Dianna Fahey repeats and reavers paragraphs 1 through 88 above and incorporates them herein by reference.

90. Article CXIV states: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth."

91. Dianna Fahey has more than one physical or mental impairment, including epilepsy, seizure disorder, and chronic pain, that substantially limit one or more of her major life activities, including but not limited to learning and neurological function.  Curry College regarded her as having such impairment, and she has a record of such impairment.

92. Ms. Fahey is otherwise qualified for participation in Curry College's full academic and residential programming, as her disability does not prevent her from engaging in this programming.

93. Ms. Fahey is being excluded from participation in and being denied the benefits of Curry College's programming, and being subjected to discrimination by Curry College, solely by reason of her handicap by, for example, banning her from having a roommate and requiring her to live with a Personal Care Attendant at her expense in order to reside on campus and not implementing the recommendation of her pain management plan.

94.  As a result, Dianna Fahey was harmed by the actions of Curry College, including being denied the opportunity to fully access campus residential life and programming, and suffered injuries, damages, and humiliation.

## COUNT VI – Breach of Contract

### [Against Curry College]

95.  The Plaintiff Dianna Fahey repeats and reavers paragraphs 1 through 94 above and incorporates them herein by reference.

96.  Ms. Fahey and Curry College were bound by a paid enrollment agreement for tuition, room and board, and a meal plan for Ms. Fahey to attend Curry College for the 2023-24 school year as a resident student.

97.  The Student Handbook committed Curry College to promoting an accessible, equitable and inclusive learning environment at the College for all undergraduate students with disabilities consistent with disability laws.

98.  Curry College breached its duties under the agreement by refusing to allow Ms. Fahey to live on campus with a roommate, refusing to allow Ms. Fahey to live on campus at all unless she lived with and paid for a Personal Care Attendant, and not implementing the recommendations of her pain management plan.  She has also not been able to access all programming at Curry College that should otherwise be available to her as an enrolled resident student.

99.  The breach caused Ms. Fahey injuries and damages, including but not limited to payments for housing and meals that she cannot use and transportation costs.

## COUNT VII – Breach of Covenant of Good Faith and Fair Dealing

### [Against Curry College]

100.   The Plaintiff Dianna Fahey repeats and reavers paragraphs 1 through 99 above and incorporates them herein by reference.

101.   Ms. Fahey and Curry College were bound by a paid enrollment agreement for tuition, room and board, and a meal plan for Ms. Fahey to attend Curry College for the 2023-24 school year as a resident student.

102.   Curry College unfairly prevented Ms. Fahey from receiving the benefits she was entitled to under the agreement and breached its duties under the agreement, including to be free from discrimination and to provide the resident housing, meals, and programming for which the family paid.

103.   The breach caused Ms. Fahey injuries and damages, including but not limited to payments for housing and meals that has not been able to use and transportation costs.

## COUNT VIII – Intentional Infliction of Emotional Distress

### [Against Curry College and Erik Muurisepp]

104.   The Plaintiffs Dianna Fahey, Daniel Fahey, and Marie Fahey repeat and reaver paragraphs 1 through 103 above and incorporate them herein by reference.

105.   Curry College and Erik Muurisepp, by their actions and omissions as described above, intended to inflict emotional distress upon the Plaintiffs or knew or should have known that emotional distress was likely to result from their conduct.

106.   Dianna, Daniel, and Marie Fahey communicated with various members of Curry College about her enrollment in Curry College and the PAL Program for summer 2023 and the 2023-24 school year.  These communications included information and documentation

21

about Ms. Fahey's medical diagnoses and related needs, and her desire to live as a resident student on campus.  The Defendants knew that Mr. and Mrs. Fahey were working closely with Ms. Fahey in connection with Curry College and sometimes communicating on her behalf with her permission.

107.   For the 2023-24 school year, the Defendants required that Ms. Fahey live in a double room without a roommate and with a Personal Care Attendant at her expense, without justification, and after Curry College previously promised Ms. Fahey that she could live on campus with a roommate without the Personal Care Attendant requirement.

108.   The Defendants misrepresented Ms. Fahey's medical condition and recommendations from her doctor to exclude her from the equal opportunity to live with a roommate on campus.

109.   After Ms. Fahey objected to the Personal Care Attendant requirement to Erik Muurisepp, the Defendants removed Ms. Fahey's roommate and transferred her to another double room without a roommate.

110.   The Defendants discriminated against Ms. Fahey, forcing her to be a commuter student.

111.   Erik Muurisepp gave a speech during an orientation event at which Ms. Fahey was present and claimed he cared about the students and was there to support them.  Because this was not true, Ms. Fahey got visibly very upset, cried, and left with her parents.

112.   Curry College failed to provide Ms. Fahey with a necessary accommodation for a private quiet space under her pain management plan despite a promise to do so.

113.   The Defendants' conduct was extreme and outrageous.

114. The emotional distress for all the Plaintiffs was severe and manifested as described above, including feelings of unequal treatment, stress, nervousness, anxiety, stomachaches, lost sleep, migraines, and – for Ms. Fahey - more chronic arm pain.

115. The conduct of the named Defendants was the cause of the emotional distress for all Plaintiffs.

116. As a result, the Faheys suffered injuries and damages as described above, including but not limited to discriminatory exclusion from living on campus, humiliation, unfulfilled services already paid for, and additional expenses and lost wages.

COUNT IX – Negligent Infliction of Emotional Distress

[Against Curry College and Erik Muurisepp]

117. The Plaintiffs Dianna Fahey, Daniel Fahey, and Marie Fahey repeat and reaver paragraphs 1 through 116 above and incorporate them herein by reference.

118. The negligent actions and omissions of Curry College and Erik Muurisepp harmed the Plaintiffs and were the cause of their emotional distress, as described above.

119. Dianna, Daniel, and Marie Fahey communicated with various members of Curry College about her enrollment in Curry College and the PAL Program for summer 2023 and the 2023-24 school year, as indicated above.  These communications included information and documentation about Ms. Fahey's medical diagnoses and related needs, and her desire to live as a resident student on campus.  The Defendants knew that Mr. and Mrs. Fahey were working closely with Ms. Fahey in connection with Curry College and sometimes communicating on her behalf with her permission.

120. For the 2023-24 school year, the Defendants required that Ms. Fahey live in a double room without a roommate and with a Personal Care Attendant at her expense, without

justification, and after Curry College previously promised Ms. Fahey that she could live on campus with a roommate without the Personal Care Attendant requirement.

121.   The Defendants misrepresented Ms. Fahey's medical condition and recommendations from her doctor to exclude her from the equal opportunity to live with a roommate on campus.

122.   After Ms. Fahey objected to the Personal Care Attendant requirement to Erik Muurisepp, the Defendants removed Ms. Fahey's roommate and transferred her to another double room without a roommate.

123.   The Defendants discriminated against Ms. Fahey, forcing her to be a commuter student.

124.   Erik Muurisepp gave a speech during an orientation event at which Ms. Fahey was present and claimed he cared about the students and was there to support them.  Because this was not true, Ms. Fahey got visibly very upset, cried, and left with her parents.

125.   A reasonable person would have suffered emotional distress under the circumstances.

126.   The emotional distress for all the Plaintiffs was severe and included physical symptomology as described above, such as feelings of unequal treatment, stress, nervousness, anxiety, stomachaches, lost sleep, migraines, and – for Ms. Fahey - more chronic arm pain.

127.   As a result, the Faheys suffered injuries and damages as described above, including but not limited to discriminatory exclusion from living on campus, humiliation, unfulfilled services already paid for, and additional expenses and lost wages.

## COUNT X – Negligence

### (Against Curry College)

128.   The Plaintiff Dianna Fahey repeats and reavers paragraphs 1 through 127 above and incorporates them herein by reference.

129.   Curry College owed a duty to exercise reasonable care to enrolled student Dianna Fahey.

130.   For example, Curry College should have allowed Ms. Fahey to live on campus without the conditions imposed by Curry College and should have implemented her pain management plan but did neither.

131.   The negligent actions and omissions of Curry College resulted in the harm that Ms. Fahey endured, including exclusion from services, being denied the opportunity to fully access campus residential life, emotional and physical distress, and financial loss.

132.   As a direct and proximate cause of the negligence of Curry College, Dianna Fahey suffered injuries, damages, and humiliation, as described above.

## IMMEDIATE, ONGOING, AND IRREPARABLE HARM

Relief at a later time will not adequately address the injuries and injustices caused by Curry College that prevent Dianna Fahey from residing on campus with a roommate.  Curry College must be immediately ordered to lift the requirement of a Personal Care Attendant and place Ms. Fahey in a double room with a roommate.  Ms. Fahey is being discriminated against and harmed every day as she continues to be denied the opportunity to live on campus like any other student.

<u>RELIEF REQUESTED</u>

The Plaintiffs seek judgment against the Defendants and orders awarding:

A.      A temporary restraining order ordering Curry College to allow Dianna Fahey to live on campus in a double room with a roommate and without the requirement of a Personal Care Attendant;

B.      A preliminary injunction ordering Curry College to allow Dianna Fahey to live on campus in a double room with a roommate and without the requirement of a Personal Care Attendant;

C.      A permanent injunction ordering Curry College to allow Dianna Fahey to live on campus in a double room with a roommate and without the requirement of a Personal Care Attendant;

D.      Compensatory and punitive damages in an amount warranted by the evidence at trial;

E.      Declaratory judgment to remedy the injuries and injustices caused by the Defendants;

F.      Reasonable attorney fees and costs incurred in this action;

G.      Such other relief as permitted by law and as this court shall consider to be fair and equitable.


<u>JURY DEMAND</u>

The Plaintiffs hereby demand a jury on all claims and issues so triable.

Respectfully submitted,
DIANNA FAHEY, DANIEL FAHEY &
MARIE FAHEY
By their attorney,


 /s/ Peter A. Hahn
Peter A. Hahn, Esquire
BBO #663346
ONELAW LLC
55 Chapel Street, Suite 301
Newton, MA 02458
(617) 831-4355
p.hahn@one-law.us

Date:   October 4, 2023


RULE 11 CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/ Peter A. Hahn
Peter A. Hahn, Esquire

Date:   October 4, 2023